UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSE NONATO, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Slowtide, LLC,<br><br>Defendant. | Civil Action No. 1:26-cv-02689<br><br>Hon. Sharon Johnson Coleman |

**PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT**

Now comes Plaintiff Jose Nonato, by and through his attorneys Equal Access Law Group PLLC, respectfully moves this Court, pursuant to Federal Rules of Civil Procedure 55(b)(2), for entry of default judgment against Defendant Slowtide, LLC, ("Defendant") and in support states as follows:

**PROCEDURAL BACKGROUND**

1. Plaintiff filed this action on March 10, 2026, asserting claims under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181–89. (ECF No. 1).
2. Defendant was properly served through the California Secretary of State as Agent for Service of Process on May 27. 2026, after diligent attempts at Defendant's registered agent address and principal place of business address. (ECF No. 08; ECF No. 17).
3. Defendant failed to answer, appear, or otherwise respond to the Complaint.
4. On July 7, 2026, Plaintiff moved for entry of default. (ECF No. 21-22). On July 7, 2026, this Court granted Plaintiff's request for entry of default pursuant to Rule 55(a). (ECF No. 22).
5. Plaintiff now timely moves for default judgment.

## ARGUMENT

**A. Liability Under Title III of the ADA**

1. Upon default, the well-pleaded allegations of the Complaint, except those relating to damages, are taken as true. Because Defendant failed to appear, plead, or otherwise defend, the Court may enter default judgment where those admitted allegations establish liability and support the requested relief. See *e360 Insight v. The Spamhaus Project*, 500 F.3d 594, 602 (7th Cir. 2007). Courts in this Circuit routinely enter default judgment where a defendant fails to appear and the well-pleaded allegations establish liability under federal law. See *Wehrs v. Wells*, 688 F.3d 886, 892 (7th Cir. 2012).
2. Plaintiff specifically attempted to purchase Defendant's Loca Beach Towel, on Defendant's website on or about December 5, 2025, but was prevented from completing the transaction because he encountered accessibility barriers that interfered with screen-reader navigation, keyboard access, product information, checkout functionality, and customer-support access. (Compl. ¶¶ 35(a)-(l); 40).
3. These barriers directly denied Plaintiff the ability to make a transaction in the same manner as sighted users. *Id.*
4. Plaintiff is legally blind, and Plaintiff relies on and uses a screen-reading software and screen reader technology to access websites. When attempting to navigate Defendant's website, Plaintiff was unable to access core features, such as product sizing and purchase functionality, due to the absence of accessible coding elements like image alt text, keyboard navigability, and properly labeled form fields.
5. Defendant's conduct constitutes unlawful discrimination under 42 U.S.C. §§ 12182(a), (b)(1)(A), and (b)(2)(A).

6. Title III of the ADA requires public accommodations to provide equal access to goods and services for individuals with disabilities without discrimination. 42 U.S.C. § 12182(a). Discrimination includes the failure to make reasonable modifications to policies, practices, or procedures when necessary to afford individuals with disabilities equal access, unless the modification would fundamentally alter the nature of the goods or services offered. 42 U.S.C. § 12182(b)(2)(A)(ii).

7. Courts within this District have repeatedly found that commercial websites may constitute public accommodations under Title III, particularly where a nexus exists between the website and commercial activity. *See, e.g., Walsh v. Dania Inc*., 716 F. Supp. 3d 655, 660–62 (N.D. Ill. 2024); *Colon v. HY Supplies, Inc.*, 2023 WL 7666740, at *4 (N.D. Ill. Nov. 15, 2023). The Department of Justice ("DOJ") has also confirmed that Title III applies to websites (DOJ, Guidance on Web Accessibility and the ADA (Mar. 2022)).

8. Further, although the Seventh Circuit has not squarely decided whether a website standing alone is a "place of public accommodation," it has recognized that Title III's coverage is not limited to physical spaces. *See Doe v. Mutual of Omaha Ins. Co*., 179 F.3d 557, 558-559 (7th Cir. 1999) (owner or operator of a facility "whether in physical space or in electronic space" may not exclude disabled persons); *Morgan v. Joint Admin. Bd*., 268 F.3d 456, 459-60 (7th Cir. 2001) (same). What matters is that the good or service is offered to the public. *Id.* Relying on that guidance, this Court has since held that a purely online retailer is not exempt from Title III merely because it has no brick-and-mortar location, explaining that "a place of public accommodation is not limited to physical spaces." *Walsh*, 716 F. Supp. 3d 655, 660–62. District Courts elsewhere in the

Seventh Circuit are in accord, treating *Morgan*'s holding that a public accommodation is not limited to a physical site as squarely resolving that a retail website is a place of public accommodation under Title III – including in cases materially indistinguishable from this one, where the same screen-reader-incompatibility allegations against a different online retailer were held to state a Title III claim on default judgment. *See McCabe v. Tire Web LLC,* No. 23-cv-459-pp, 2024 U.S. Dist. LEXIS 163346, at*14 (E.D. Wis. Sept. 11, 2024) (holding a retail tire website is a place of public accommodation and entering default judgment for the blind plaintiff); *Hippe v. Cir. City Corp., Inc.*, No. 25-cv-298-pp, 2025 U.S. Dist. LEXIS 160440, at *7 (E.D. Wis. Aug. 19, 2025) (same, on nearly identical allegations).

9. Because Defendant's website offers retail goods directly to the public, and Defendant has defaulted, the Complaint sufficiently establishes ADA liability.

10. Plaintiff encountered additional specific access barriers on Defendant's website, including:

    a. Landmark structure that was incorrectly defined, using repetitive labels that made it difficult to determine the page section to which a given landmark led;

    b. Interactive elements that were not programmatically associated with their corresponding label elements, so that their purpose was not announced to Plaintiff;

    c. Interactive elements that could not be focused using the Tab key, with no instructions provided for accessing them via arrow keys;

    d. Sub-menu elements within drop-down menus that were inaccessible via keyboard and required mouse-dependent, device-specific functionality;

e. Links that navigated to external websites without indicating that they would do so, disorienting Plaintiff;

f. An email address on the Contact US page presented as plain text without a "mailto:" prefix, making it non-interactive and difficult to use to initiate an email;

g. An automatic pop-up window that appeared without notice of the visual context change; Links that opened new windows without any prior warning, causing Plaintiff to become disorientated when attempting to use the browser's "Back "function;

h. Interactive elements with inappropriate, non-descriptive names that prevented Plaintiff from identifying their purpose;

i. A "button" interactive element built with inappropriate tags and an incorrect role, providing inaccurate information about the element's purpose;

j. Navigation sub-menus with drop-down lists that did not announce their expanded or collapsed state; and

k. Search suggestions that appeared visually after a search term was entered but were never announced to Plaintiff's screen reader. (Compl. ¶ 35(a)-(l)).

l. A requirement that transactions be performed exclusively with a mouse, without keyboard-accessible alternatives. (Compl. ¶ 37).

11. These barriers denied Plaintiff full and equal enjoyment of the goods and services offered on the website.

**B. Injunctive Relief Is Warranted**

12. The ADA authorizes private plaintiffs to obtain injunctive relief to prevent ongoing and future discrimination. See 42 U.S.C. § 12188(a)(1); *Scherr v. Marriott Int'l, Inc.,* 703

F.3d 1069, 1075 (7th Cir. 2013). To obtain a permanent injunction, Plaintiff must show success on the merits, irreparable harm, the inadequacy of legal remedies, and that the public interest favors relief. *Liebhart v. SPX Corp.*, 998 F.3d 772, 779 (7th Cir. 2021). Plaintiff satisfies each factor here.

13. As a threshold matter, Plaintiff also satisfies Article III's standing requirements for prospective injunctive relief. A Title III plaintiff seeking an injunction must show a real and immediate threat that he will again be subject to the challenged conduct. For example, by showing that he intends to return to the defendant's business, or is currently deterred from doing so, because of the alleged barriers. *Scherr*, 703 F.3d 1069, at 1075. Plaintiff remains interested in purchasing the Luca Beach towel from Defendant's Website and is currently deterred from returning because the barriers described herein remain uncured, as alleged in Plaintiff's Complaint. (ECF No. 1). Because Defendant has defaulted, these well-pleaded allegations are taken as true and establish Plaintiff's standing to seek the injunctive relief requested below.

14. First, Plaintiff has succeeded on the merits because Defendant's default admits the well-pleaded allegations establishing that Defendant's website denied Plaintiff full and equal access to its goods and services. Plaintiff is legally blind, uses screen-reader technology, attempted to purchase goods from Defendant's website, and was prevented from completing the transaction due to accessibility barriers affecting navigation, product information, keyboard access, customer-support access, and checkout functionality. Defendant's website relied on inaccessible visual and interactive elements despite the availability of accessibility technology commonly used by online retailers. These admitted allegations establish discrimination under Title III of the ADA.

15. Second, Plaintiff has been and will continue to suffer irreparable harm absent injunctive relief because he will continue to be denied meaningful full and equal access to Defendant's Website. The barriers alleged in the Complaint prevent Plaintiff from navigating the website, understanding product information, using interactive elements, and completing transactions in the same manner as sighted users. Courts routinely recognize that ongoing denial of accessible goods and services constitutes continuing harm supporting equitable relief. See *Robles v. Domino's Pizza, LLC,* 913 F.3d 898, 905 (9th Cir. 2019) (where the inaccessible website/app prevented blind user from ordering pizza — effectively an inaccessible checkout barrier); *Andrews v. Blick Art Materials, LLC,* 268 F. Supp. 3d 381, 393 (E.D.N.Y. 2017) (where the Defendant encountered inaccessible purchasing functions and barriers preventing online shopping); *National Federation of the Blind v. Target Corp.,* 452 F. Supp. 2d 946, 956 (N.D. Cal. 2006) (noting that "the inaccessibility of [the website] impedes the full and equal enjoyment of goods and services offered…").

16. Third, Plaintiff has no adequate remedy at law because compensatory and punitive damages are unavailable to private plaintiffs under Title III of the ADA. See 42 U.S.C. § 12188(a)(1) (incorporating remedies of 42 U.S.C. § 200a-3(a), which authorizes only injunctive relief). However, without injunctive relief requiring Defendant to correct the accessibility barriers, Plaintiff has no effective remedy to obtain equal access to Defendant's website.

17. Fourth, the public interest strongly favors injunctive relief. The ADA was enacted to eliminate discrimination, promote equal access for individuals with disabilities and, in this case, prevent exclusion from online commerce. Approximately 8.1 million

Americans are visually impaired, including 260,000 in Illinois. (Compl. ¶ 3) Ensuring accessibility therefore has broad public impact. Allowing inaccessible websites to persist excludes an entire community from daily commerce, contrary to the ADA's mandate. *Id.* Ensuring that Defendant's website is accessible benefits not only Plaintiff, but also other blind and visually impaired consumers who rely on screen-reader technology, and the public interest in enforcing the ADA is well-established. See *United States v. AMC Entm't, Inc.*, 549 F.3d 760, 773 (9th Cir. 2008) (injunctions enforcing ADA accessibility requirements serve the public interest); *Scherr*, 703 F.3d 1069, at 1075 (ADA violations inherently implicate strong public interests in accessibility).

18. Plaintiff's requested injunction complies with Rule 65(d), which requires specific and definite terms. Plaintiff does not seek vague incorporation of third-party standards but rather specific technical actions to ensure accessibility.

19. Specifically, and consistent with Rule 65(d), Plaintiff respectfully requests that the Court order Defendant, within ninety (90) days of entry of judgment, to remediate the barriers identified in Paragraph 10 above by, at minimum: (a) correcting landmark structure so that landmarks are accurately and non-repetitively labeled; (b) programmatically associating all interactive elements with their corresponding labels; (c) ensuring all interactive elements can be reached and operated using the Tab key and standard keyboard navigation; (d) making all sub-menu and drop-down menu elements operable via keyboard, without reliance on a mouse; (e) providing advance notice, programmatically and visually, before a link navigates the user to an external website; (f) formatting all contact email addresses as interactive "mailto:" links; (g) eliminating automatic pop-up windows that are not announced to assistive technology, or providing

accessible notice of and control over such pop-ups; (h) providing advance notice before a link opens a new window; (i) providing descriptive, accurate names for all interactive elements; (j) correcting improperly tagged interactive elements so that they carry the correct role and are properly identified to assistive technology; (k) ensuring that the expanded or collapsed state of navigation sub-menus is announced to screen readers; (l) ensuring that search suggestions are announced to screen readers as they appear; and (m) ensuring that all transactions, including checkout, can be completed using a keyboard alone, without reliance on a mouse.

20. Plaintiff further requests that the Court order Defendant to conform its website to the Web Content Accessibility Guidelines (WCAG) 2.2 Level, or a successor standard then in effect, and to serve written confirmation of remediation on Plaintiff's counsel, with leave for Plaintiff to petition the Court for further relief if Defendant fails to timely or fully comply.

21. Plaintiff seeks default judgment solely as to his individual claim under Title III of the ADA and seeks only declaratory and injunctive relief requiring Defendant to remediate the specific accessibility barriers alleged in the Complaint. Plaintiff does not seek class certification, damages, or relief on her state-law claim in this motion.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court:

1. Enter default judgment in favor of Plaintiff on her Title III ADA claim;
2. Declare that Defendant's website violates Title III of the ADA;
3. Enter the permanent injunction set forth above; and

4. Reserve jurisdiction to determine Plaintiff's reasonable attorneys' fees and costs upon appropriate petition within sixty (60) days after entry of default judgment; and
5. Find no damages inquest is necessary because Plaintiff seeks only injunctive relief in this motion.

WHEREFORE, Plaintiff respectfully requests that the Court enter default judgment against Defendant and grant the relief requested herein.

Dated: July 14, 2026

Respectfully Submitted,

By: ***/s/ Alison Chan***

Alison Chan, Esq.
Equal Access Law Group PLLC
4903 Avenue N
Brooklyn, NY 11234
O: (844) 731-3343
C: (929) 442-2154
Email: achan@ealg.law
Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on July 14, 2026, I electronically filed the foregoing with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

I further certify that, on the same date, I caused a copy of the foregoing Motion for Default Judgment to be served on Defendant by U.S. Mail, first-class postage prepaid, at the following addresses: (1) California Secretary of State, Business Programs Division – Substitute Service of Process, 1500 11th Street, 3rd Floor, Room 390, Sacramento, CA 95814; and (2) Slowtide, LLC, ATTN: Kyle Spencer, 336 East 17th Street Suite 203, Costa Mesa, California 92627.

*/s/ Alison Chan*______________________
Alison Chan, Esq.
4903 Avenue N
Brooklyn, NY 11234
Phone: (929) 442-2154
Email: Achan@Ealg.law
*Attorneys for Plaintiff*